Hillsborough-southern judicial district
No. 2001-172

THE STATE OF NEW HAMPSHIRE

v.

BRUCE WATKINS

Argued: September 18, 2002
Opinion Issued: December 24, 2002

*Philip T. McLaughlin*, attorney general (*Susan P. McGinnis*, attorney, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, and *David M. Rothstein*, deputy chief appellate defender, of Concord (*Mr. Johnson* and *Mr. Rothstein* on the brief, and *Mr. Johnson* orally), for the defendant.

NADEAU, J. The defendant, Bruce Watkins, was convicted in Superior Court (*Hampsey*, J.) for driving after having been certified a habitual offender, *see* RSA 262:23 (1993) (amended 2000, 2001), and disobeying a police officer, *see* RSA 265:4(I)(b) (1993). In his brief on appeal, he seeks reversal of only the driving after certification conviction. We reverse and remand.

The record supports the following facts. The defendant was stopped for a traffic violation on June 3, 2000. When it was discovered that he had given the officer who stopped him a false name, the defendant was arrested for disobeying a police officer. He was also charged with driving after certification as a habitual offender, having been certified on January 27, 1993.

After a jury trial, the defendant was found guilty on both charges. On appeal, he argues that the trial court erred by: 1) failing to dismiss the indictment for driving after certification as a habitual offender where the certification occurred more than seven years prior to his arrest; 2) failing

to charge the jury on a lesser-included offense; 3) allowing the State to introduce his prior conviction for driving after certification as a habitual offender; and 4) failing to instruct the jury regarding the State's misrepresentation of the law in its closing argument.

The defendant first contends that the habitual offender charge should have been dismissed because his certification as a habitual offender expired prior to June 3, 2000. Specifically, he argues that as a matter of statutory interpretation, a person may not be certified as a habitual offender for a period longer than four years. Alternatively, he argues that if the applicable statutes are interpreted to allow a longer certification period, they violate the constitutional separation of powers doctrine by delegating unlimited legislative power to an administrative agency.

We review questions of statutory interpretation *de novo. See Scheffel v. Krueger*, 146 N.H. 669, 671 (2001). "This court is the final arbiter of the meaning of a statute, as expressed in the words of the statute itself. We interpret statutes not in isolation, but in the context of the overall statutory scheme." *Appeal of Mikell*, 145 N.H. 435, 439 (2000) (quotation omitted).

RSA 259:39 defines a habitual offender as a person whose driving record shows a specified number of convictions for certain offenses committed within a five-year period. *See* RSA 259:39 (1993) (amended 2001). RSA 262:19, in turn, provides a mechanism for revoking the driver's licenses of persons determined to be habitual offenders. It provides, in part:

> If the director [of the division of motor vehicles of the department of safety] finds that [a] person is the same person named in the transcript or abstract [of the person's conviction record] and that the person is an habitual offender, the director shall, by appropriate order, revoke the person's driver's license and direct the person not to drive a motor vehicle on the ways of this state for a period of one to 4 years effective upon the date of the order or upon dates of final conviction of the offense that resulted in certification.

RSA 262:19, III (Supp. 2002); *see also* RSA 262:19, I (Supp. 2002); RSA 259:20 (1993).

The defendant asserts that RSA 262:19, III restricts the period for which a habitual offender may be certified to a maximum of four years. Although he recognizes that a habitual offender must petition to have his license restored, he argues that "[t]he question posed by this case concerns the status of a person after the habitual offender certification period has ended, but before any request for the return of the license is made." He contends that because his certification as a habitual offender had expired

prior to June 3, 2000, he could not be convicted of the offense of driving after certification.

■ We find nothing in the statute to support the defendant's interpretation. RSA 262:19, III makes no reference either to a period of certification or to a time limitation on habitual offender status. Rather, the time period of one to four years referred to in RSA 262:19, III is the period for which the habitual offender's license may be revoked and he may be ordered not to drive upon the ways of this State. This period of license revocation is referred to as such in two other provisions of the statute. Thus, RSA 262:22 provides:

> No license to drive motor vehicles in New Hampshire shall be issued to an habitual offender:
>
> I. Until such time as *the period of revocation imposed pursuant to RSA 262:19, III* has been served;
>
> II. Until such time as financial responsibility requirements are met; and
>
> III. Until the license of such person to drive a motor vehicle in this state has been restored in writing by an order of the director or of a court of record entered in a proceeding as hereinafter provided.

RSA 262:22 (1993) (emphasis added). RSA 262:24 provides:

> Upon the expiration of *the revocation period imposed pursuant to RSA 262:19, III*, or under conditions established by the commissioner [of safety] pursuant to RSA 262:19, VI, such person may petition the director for restoration of his license to drive a motor vehicle on the ways of this state. Upon such petition, and for good cause shown, the director may restore to such person the license to drive a motor vehicle on the ways of this state upon such terms and conditions as the director may prescribe subject to other provisions of law relating to the issuance of drivers' licenses.

RSA 262:24 (1993) (emphasis added); *see also* RSA 259:13 (1993).

Read together, these statutes provide that the director is authorized to revoke a habitual offender's license for one to four years, at the end of which time the habitual offender is entitled to petition for restoration of his license. Thus, the revocation period of one to four years specified in RSA 262:19, III constitutes the time during which issuance of a license to a habitual offender is absolutely prohibited. At the end of that period, and upon petition of the habitual offender, after satisfying the requirements

for licensure including those of financial responsibility, *see* RSA 262:22, II, and for good cause shown, the director may restore the habitual offender's license. *See* RSA 262:24.

Moreover, RSA 259:90 provides, in part:

> After a license, registration, permit or privilege has been revoked, no application for reissue of said license, registration, permit, or privilege may be acted upon by the department until the expiration of the period of revocation. The revocation of any license, registration, permit, or privilege shall remain in effect until a license, registration or permit has been reissued or the privilege has been restored by the department.

RSA 259:90 (1993). In *State v. Batchelder*, 125 N.H. 694, 695 (1984), we held that "[i]f the revokee fails to seek restoration of his driving privileges after the four years have expired, he is still an habitual offender because the original order remains in effect until he takes the affirmative step of seeking restoration." The evidence presented at trial, in this case, indicated that the defendant's license had not been restored as of June 3, 2000.

■ Finally, we note that RSA 262:23 itself, the section under which the defendant was convicted, says nothing about a certification period or the expiration thereof, but rather requires for conviction that an order prohibiting a person from driving be in effect. *See* RSA 262:23; *see also State v. Crotty*, 134 N.H. 706, 710 (1991). RSA 262:23, I, provides, in part:

> It shall be unlawful for any person to drive any motor vehicle on the ways of this state *while an order of the director or the court prohibiting such driving remains in effect.* If any person found to be an habitual offender under the provisions of this chapter is convicted of driving a motor vehicle on the ways of this state *while an order of the director or the court prohibiting such operation is in effect,* he shall be sentenced . . . to imprisonment for not less than one year nor more than 5 years.

(Emphasis added.) Reference to the order remaining in effect, rather than to the duration of the revocation period, accords with the language of RSA 259:90, reiterating that a license remains revoked until restored, even after the initial revocation period has expired. Thus, we conclude that the defendant could properly have been charged with violation of RSA 262:23 and the trial court did not err in denying his motion to dismiss.

■ The defendant nevertheless argues that if RSA 262:23 is so interpreted, it is unconstitutional. Specifically, he contends that it violates

the separation of powers doctrine because it delegates unlimited legislative power to the director to continue the habitual offender status of a person indefinitely. The defendant argues that this case is similar to *Guillou v. State*, 127 N.H. 579 (1986), in which we struck down a statute that allowed the director of motor vehicles to suspend or revoke a license for any cause he deemed sufficient. We also noted in *Guillou*, however, that an "example of motor vehicle statutes which contain adequate standards for administrative determinations and court review is the habitual offender law." *Id.* at 583. Accordingly, we reject the defendant's argument.

The defendant next argues that the trial court erred in failing to instruct the jury on the lesser-included offense of driving after suspension or revocation. A defendant is entitled to have the jury consider a lesser-included offense if the following requirements are met:

> First, the lesser offense must be embraced within the legal definition of the greater offense. This requires a comparison of the statutory elements of the offenses in question without reference to the evidence adduced at trial. Second, the evidence adduced at trial must provide a rational basis for a finding of guilt on the lesser offense rather than the greater offense.

*In re Nathan L.*, 146 N.H. 614, 617 (2001) (quotations, citation and brackets omitted).

■ We held in *State v. Moses*, 128 N.H. 617, 621 (1986), that driving after suspension or revocation, *see* RSA 263:64 (Supp. 2002), is a lesser-included offense to driving after certification as a habitual offender, *see* RSA 262:23. We stated in *Moses* that "the only element in either offense that is not common to the other is the habitual offender status of the defendant." *Id.* Our holding in *State v. Lillios*, 128 N.H. 385, 386 (1986), however, indicates that another element of driving after certification not common to driving after suspension or revocation is that operation of the vehicle take place on a way. Nevertheless, the offense of driving after suspension or revocation is still embraced within the legal definition of driving after certification. Thus, as the State concedes, the first requirement for a lesser-included offense instruction is satisfied, and the only issue before us is whether the evidence adduced at trial provided a rational basis for a finding of guilt on the offense of driving after suspension or revocation rather than on the offense of driving after certification as a habitual offender.

The State first contends that the defendant failed to preserve this issue for appellate review because, although he made a pre-trial request for a lesser-included offense instruction, he failed to renew that request at the

close of evidence. Assuming, without deciding, that the issue is preserved, we nevertheless conclude that the court did not err in declining to give the instruction.

The defendant argues that the second requirement of the test was satisfied at trial because he challenged the non-common element of his habitual offender status, and its related *mens rea* requirement, by contending that the status had expired and by undermining the State's proof that he knew of his status. Because we have rejected the defendant's expired-status argument as a matter of law, we hold that it did not entitle him to a lesser-included offense instruction.

To obtain a conviction for driving after certification as a habitual offender, the State was required to prove not only that the defendant drove a motor vehicle on the ways of this State while a habitual offender order prohibiting such operation was in force, but also that he did so with knowledge of his status as a habitual offender. *See Crotty*, 134 N.H. at 710. The defendant offered to stipulate, if the court would instruct on the lesser-included offense of driving after suspension or revocation, that the lesser-included offense would constitute a class A misdemeanor.

Conviction of the misdemeanor offense of driving after suspension or revocation requires proof: "(1) that the defendant's license to drive had been suspended or revoked; (2) that the defendant drove a motor vehicle after such suspension; and (3) that the defendant did so with knowledge of the revocation or suspension of his license to drive." *State v. Curran*, 140 N.H. 530, 532 (1995). Thus, both the greater and lesser offenses have a knowledge requirement.

The sole license revocation, of which there was any evidence, was the one imposed as a result of the defendant's habitual offender certification. The only evidence that formed a basis for the defendant's knowledge of the revocation was that he was served with notice of his certification hearing, attended the hearing, and was served with a copy of the certification order indicating that his license was revoked. Thus, the only evidence upon which the jury could rationally find that the defendant knew his license had been revoked also supported the finding that the defendant knew of his status as a habitual offender. The evidence, therefore, did not "provide a rational basis for a finding of guilt on the lesser offense rather than the greater offense." *In re Nathan L.*, 146 N.H. at 617 (quotation omitted). Accordingly, the trial court did not err in refusing to instruct on the lesser-included offense.

The defendant next argues that the trial court erred by allowing the State to introduce his conviction in 1996 for driving after certification as a habitual offender. He contends that admitting evidence of the conviction

violated New Hampshire Rules of Evidence 401, 403 and 404(b). We review the trial court's decision to admit the prior conviction under the unsustainable exercise of discretion standard. *See State v. Brewster*, 147 N.H. 645, 648 (2002). "To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Lambert*, 147 N.H. 295, 296 (2001) (quotation omitted).

Rule 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show that the person acted in conformity therewith." N.H. R. Ev. 404(b). "Prior bad acts evidence is admissible when it is relevant for a purpose other than proving the defendant's character or disposition; there is clear proof that the defendant committed the act; and the probative value of the evidence is not substantially outweighed by its prejudice to the defendant." *Brewster*, 147 N.H. at 648. Because the first and third prongs of this test entail determinations of relevance and probative value versus prejudice, *see, e.g., State v. Marti*, 140 N.H. 692, 695 (1996); *State v. Dushame*, 136 N.H. 309, 316 (1992), we need not separately address the defendant's contentions that Rules 401 (relevance) and 403 (probative value substantially outweighed by danger of, among other things, prejudice) were also violated.

The State sought to admit the prior conviction as tending to prove the defendant's knowledge of his status as a habitual offender. We agree that the prior conviction has some relevance to the issue of knowledge. "Relevant evidence need only have a 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Dushame*, 136 N.H at 316 (quoting N.H. R. Ev. 401).

We do not believe that the prior conviction has the relevance which it appears to have been accorded by the trial court. The court allowed admission of the prior conviction to counter the defendant's argument that his status had changed after the expiration of the revocation period. The 1996 conviction, however, was for an offense that apparently occurred on September 1, 1995, less than three years after his certification on January 27, 1993. Thus, the defendant's 1996 conviction is not necessarily relevant to his knowledge of his status at the end of the revocation period.

Turning to the third prong of the analysis, we conclude that the probative value of the 1996 conviction is substantially outweighed by its prejudice. We acknowledge that the prior conviction was not for a particularly "odious or provocative" act, and thus is "less likely to appeal to the jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a

jury to base its decision on something other than the established propositions in the case." *State v. Smith*, 141 N.H. 271, 280 (1996) (quotations and brackets omitted). Nevertheless, we have also "recognized that unfair prejudice is inherent in evidence of other similar crimes or prior convictions." *State v. Bassett*, 139 N.H. 493, 502 (1995).

On the other hand, we conclude that the probative value of the 1996 conviction does not weigh heavily in the probative versus prejudicial balance. "The probative value of the other bad act evidence must also be considered in the context of its incremental value: trial courts must consider the extent to which the issue is established by other evidence, stipulation or inference." *State v. McGlew*, 139 N.H. 505, 510-11 (1995) (quotations omitted).

The State presented evidence of the defendant's knowledge of his habitual offender status through testimony about the 1993 certification proceedings. Moreover, the jury heard testimony that the defendant stated at the time of his arrest that he did not have a license. Although the 1996 conviction, because it occurred more recently, is arguably more probative of the defendant's knowledge of his habitual offender status in 2000 than his 1993 certification, its probative value is not significantly greater when considered in the context of this case.

■ We conclude that the 1996 conviction was cumulative of other evidence of the defendant's knowledge of his habitual offender status in 2000, and that its probative value was substantially outweighed by the danger of prejudice to the defendant. We specifically note the increased danger of prejudice where the prior conviction is for the same offense as that currently charged: "Because of the similarity of the [prior] conviction . . . and the charged crimes, the jury may have been persuaded to find the defendant guilty, at least in part, because he had previously" committed the same offense. *Bassett*, 139 N.H. at 502. Accordingly, we hold that the trial court's exercise of discretion in admitting the conviction is unsustainable and we reverse the defendant's conviction and remand for a new trial.

Because we reverse on the Rule 404(b) issue, we need not address the defendant's remaining argument that the trial court erred in failing to give a curative instruction following the State's misrepresentation of the law in its closing argument. As guidance to the trial court in similar cases, however, we offer the following. *See Ebbert v. Ebbert*, 123 N.H. 252, 255 (1983).

■ In its closing, the State argued, "In fact, ladies and gentlemen, based on the testimony and evidence that you heard in this case, the law requires you to convict." The defense objected and requested "an

instruction to the jury informing them that [the State's] statement was incorrect, and the law does not require them to convict." On appeal, the State concedes that the prosecutor misstated the law. *Cf. State v. Bonacorsi*, 139 N.H. 28, 30-31 (1994) (discussing *Wentworth* charge and jury nullification).

We recognize that "the trial court is in the best position to gauge any prejudicial effect the prosecutor's closing remarks may have had on the jury," *State v. DeCosta*, 146 N.H. 405, 415 (2001), and we therefore review a decision not to give a curative instruction under the unsustainable exercise of discretion standard. *See id.*; *Lambert*, 147 N.H. at 296. We believe, however, that in this case, where the prosecutor blatantly misstated the law, a curative instruction would have been appropriate.

*Reversed and remanded.*

BROCK, C.J., and DALIANIS, J., concurred; BARRY, J., superior court justice, specially assigned under RSA 490:3, concurred.