Coos
No. 2010-190

THE STATE OF NEW HAMPSHIRE

v.

ROBERT TOWLE

Argued: April 7, 2011
Opinion Issued: December 14, 2011

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman,* assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Robert Towle, appeals his conviction of four counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (2007) (amended 2008), and four counts of criminal liability for the conduct of another, *see* RSA 626:8 (2007). He was charged with engaging in fellatio and anal penetration with his minor son, J.T. He was also charged with committing the crime of criminal liability for the conduct of another by encouraging his wife to engage in three sexual acts with J.T., and by encouraging another adult woman to have sex with J.T. On appeal, the defendant argues that the Superior Court (*Bornstein,* J.) erred by denying his motions to proceed *pro se* and for a mistrial. We reverse and remand.

*I. Background*

At the final pre-trial conference on December 28, 2009, the defendant's attorney, Lincoln T. Soldati, sought and received a continuance of the trial until January 25, 2010, to allow him to review new evidence with the defendant. Attorney Soldati then advised the court that the defendant was concerned that Attorney Soldati's recent election as mayor of Somersworth created a conflict of interest. The following colloquy between the court and the defendant then occurred:

> THE COURT: . . . What did you want to tell me about this Office of Mayor issue?
>
> THE DEFENDANT: . . . [I]t would seem contrary to Mr. Soldati's position of mayor to try to, you know, keep the community safe, you know, if I was exonerated from these charges. You know, it seemed like, well, he got a sex offender off back into the community. You know, it seems contrary to, you know, his goal as mayor and to have the confidence of his community behind him.
>
> That only came to light — it's not like, well he — you know, he got elected mayor and now it's an issue. That is not how it is. What had come to mind is, is after he got appointed as counsel in August, it was early September he came and visited me at the prison.
>
> . . . .
>
> He only came . . . with this Court's file that was handed to him with the indictments. We went over like my background, like

education, family, you know, criminal history, . . . and we only generally and briefly touched about, you know, this case. Right? And then, you know, the visit was over.

The next I hear from him, right, in any form is . . . nearly four months later, [when] I'm told that on the next business day I have a final pretrial conference, and then Wednesday we're picking [the jury] . . . .

This was unexpected. I was not given any advance notice of [a] trial schedule. I had not met with counsel to discuss the case, to go over trial strategy, any evidence that I may have, expected witness testimony, what witnesses I intend to call. Any evidence whatsoever has not been discussed.

So when he informed me that we're picking a jury on Wednesday and having the two-day trial, I was befuddled to imagine how counsel would expect to go ahead believing that this case would only involve two days, not knowing who to call for witnesses, or what to even ask the witnesses that are intended to be called, or what evidence I have to bring forward. . . .

I believe that counsel should have met with me to some degree instead of automatically assuming what the case is based solely upon information received from the prosecution. I believe that a continuance is necessary. And, Your Honor, I'm not looking forward to a continuance. I want this case over and done with. I want to present my defense, argue it, and move on with my life, and then my family can move on with their life. I'm only asking for a continuance just so long enough to gather my exculpatory evidence.

After that, Your Honor, let's schedule it, let's go to trial, let's get it over and done with. I cannot go to trial with no prepared defense. And that's where I stand today before this Court, with no prepared defense. So please, Your Honor, I'm only asking for a continuance just so long enough to gather my evidence, and also in which time I can review the case more thoroughly or even to . . . begin to review my case with counsel.

. . . .

Also, and a note that I failed to mention that gave rise to a conflict is that when Attorney Soldati informed me, oh, yeah, you

know, we haven't discussed the case, but we're going to trial . . . [,] I was under the impression he was going to sink my defense because it would be ludicrous for any attorney to go forward as such. So I was thinking he was going to sink my defense, go to trial, put on an effort like he gave a representation that was adequate enough, you know, just to sink the case so he can get that conviction so he did his community a favor, and the community around here. That's what gave rise to it.

. . . .

THE COURT: Okay. First, with respect to what I understand to be Mr. Towle's motion to — for new counsel based on the — his alleged or perceived conflict of interest arising from defense counsel's election as Mayor of Somersworth, I'm going to deny that motion to the extent that you're requesting new counsel. . . .

With respect to . . . Mr. Towle's motion to continue, again, Mr. Soldati has represented that he can be prepared for trial by January 25th. That's four weeks from now. It would certainly seem to be adequate time in which to prepare for trial and obtain whatever exculpatory evidence or other trial preparation is needed to be accomplished.

. . . .

So to the extent that the defendant is making a motion for a further continuance beyond January 25th, that motion is denied as well.

The court asked the prosecution and defense if they had anything further to discuss and hearing that neither did, concluded the hearing.

The defendant then asked whether he could "move to correct." When the court asked what he wanted to say, the defendant stated: "I was not requesting for a new appointment of counsel, Your Honor." When the court asked why the defendant argued that Attorney Soldati had a conflict of interest, if not to request that new counsel be appointed, the defendant answered: "To proceed pro se, because I don't want to be delayed with appointment of new counsel to go through all this over again, you know. So I'd like to have it amended that I was not asking for appointment of new counsel." The court then said: "Well, at least at this stage — that's fine. I mean, I'm not removing Mr. Soldati. If there's some further motion dealing with anything, I will address it."

## II. Analysis

The defendant argues that the trial court violated the Sixth Amendment to the Federal Constitution and Part I, Article 15 of the State Constitution by failing to treat his statements as a motion to proceed *pro se*. He asserts that because he timely and unequivocally invoked his constitutional right to self-representation and "[n]othing about the circumstances suggested that [he] was not making his request knowingly, intelligently, or without awareness of the dangers of self-representation," the trial court erred by not permitting him to proceed *pro se*.

■ We first consider the defendant's arguments under the State Constitution, using federal cases only to aid our analysis. *State v. Ball*, 124 N.H. 226, 231, 233 (1983). Both Part I, Article 15 of the State Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to self-representation and the right to counsel. *State v. Ayer*, 154 N.H. 500, 516 (2006); *see State v. Barham*, 126 N.H. 631, 636 (1985); *see also Faretta v. California*, 422 U.S. 806, 807 (1975). The two rights are mutually exclusive; the exercise of one right nullifies the other. *Ayer*, 154 N.H. at 516.

Because the two rights "are antithetical, and the exercise of one right nullifies the other[,] . . . we respect a waiver of the right to counsel only if the defendant has evinced an understanding of the right and has asserted an unequivocal desire to relinquish it." *State v. Panzera*, 139 N.H. 235, 238 (1994) (citation omitted). Thus, to be effective, an assertion of the right to self-representation must be: (1) timely; (2) clear and unequivocal; and (3) knowing, intelligent and voluntary. *Ayer*, 154 N.H. at 516. The issue in this case is whether it was clear and unequivocal.

While the dissent contends that whether a request for self-representation is clear and unequivocal is a question of fact, and, therefore, we review the trial court's decision deferentially, the parties have not addressed this issue in their briefs. We need not decide the proper standard of review in this case because the defendant prevails under either a *de novo* or a deferential standard of review. *See People v. Marshall*, 931 P.2d 262, 274 (Cal. 1997).

■ As we said in *State v. Sweeney*, 151 N.H. 666, 670 (2005), "To invoke the right to self-representation, a defendant need not recite some talismanic formula." (Quotation omitted.) An affirmative, unequivocal, timely request will suffice. Here, there is no dispute that the defendant's request was timely. Based upon this record, we conclude that the defendant's request to represent himself was also affirmative and unequivocal, even though it was conditional. It was only after the court denied his request to

dismiss his lawyer and to continue the case beyond January 25 that the defendant asked to represent himself. In other words, the defendant was essentially saying that if the court would not dismiss his lawyer or grant a continuance, then he wanted to represent himself.

■ We adopt the approach of a number of courts, which have held that a conditional request is not equivocal. *Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994) ("[A] defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative [and] simultaneously requests the appointment of new counsel."); *Adams v. Carroll*, 875 F.2d 1441, 1445 (9th Cir. 1989) ("[The defendant] repeatedly indicated his desire to represent himself if the only alternative was the appointment of [the public defender]. While his requests no doubt were *conditional*, they were not equivocal."); *State v. Richards*, 456 N.W.2d 260, 264 (Minn. 1990) ("The case law is clear that a request to proceed *pro se* is not equivocal merely because it is an alternative position, advanced as a fallback to a primary request for different counsel." (quotation and brackets omitted)); *Gallego v. State*, 23 P.3d 227, 236 (Nev. 2001) ("[T]he district court erred in finding the request [to proceed *pro se*] equivocal simply because [the defendant] preferred to have new counsel.").

■ Although a judge may deny a request to proceed *pro se* when it is "merely a tactic for delay," *United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir. 2000), or an "impulsive response," *People v. Barnett*, 954 P.2d 384, 411 (Cal. 1998) (quotation omitted), or is "made in passing anger or frustration . . . or to frustrate the orderly administration of justice," *id.* at 410 (quotation omitted), or is an insincere ploy to disrupt the proceedings, *see Marshall*, 931 P.2d at 274-75, the record in this case does not support such a conclusion. Here, faced with a timely, unequivocal and clear request to represent himself, the trial court's failure to inquire further constituted structural error requiring automatic reversal and a new trial. *State v. Ayer*, 150 N.H. 14, 25 (2003).

Because the defendant prevails on his state claims, we need not reach the federal issues. *See Ball*, 124 N.H. at 237. In light of our decision, we also need not address the defendant's remaining arguments.

*Reversed and remanded.*

CONBOY, J., concurred; LYNN, J., concurred specially; DALIANIS, C.J., with whom HICKS, J., joined, dissented.

LYNN, J., concurring specially. I join Justice Duggan's opinion for the court, but write separately to address more fully the points raised by the dissent.

The dissent asserts that there is record support for the implicit finding of the trial court that the defendant's request for self-representation was "neither unequivocal nor sincere." *Post* at 818. Even if one assumes that the trial court actually made such a finding *sub silencio* — a proposition I reject — I do not agree that the record is sufficient to support it.

In support of its position, the dissent makes three basic points. First, it characterizes as specious the defendant's claim that Attorney Soldati had a conflict of interest in representing him arising out of Soldati's election as Mayor of Somersworth. However, the dissent does not clearly articulate what bearing it believes the merits of the defendant's complaints against Soldati have on the question of whether his request for self-representation was clear and unequivocal. There are two possibilities. On the one hand, if the dissent means to suggest that the mere lack of merit of the defendant's complaints against Soldati provides a justification for the trial court's denial of his request to proceed *pro se*, such a theory is legally unsound.

The defendant voiced two complaints about Attorney Soldati: (1) that Soldati had a conflict of interest because he was Mayor of Somersworth; and (2) that Soldati had not had sufficient meetings or communication with him and was not adequately prepared for trial. When, at the outset of the colloquy, the trial court understood the defendant to be seeking to discharge Soldati and replace him with new counsel, it was entirely appropriate for the court to assess the merits of the defendant's complaints against Soldati and to deny the request if it found, as it did, that there was no good reason to remove Soldati. This follows from the well-established principle that, while an indigent defendant has the right to constitutionally effective representation by court-appointed counsel, he has no right to insist on the appointment of any particular attorney. *See State v. Ayer*, 154 N.H. 500, 517 (2006). However, once the defendant "corrected" the record to indicate that he wanted to remove Soldati so he could represent himself, the situation changed significantly. *See State v. Flanagan*, 978 A.2d 64, 80 (Conn. 2009) ("[D]efendant's right to self-representation raises distinctly different, and more compelling, concerns than does his right to replace competent counsel . . . ."). This results from the fact that, under *Faretta v. California*, a defendant need not have a good reason for desiring to represent himself. *See Faretta*, 422 U.S. 806, 834 (1975) ("[A]lthough [the defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (quotation omitted)); *id.* at 836 ("We need make no assessment of how well or poorly Faretta had mastered the intricacies [of the law] . . . [f]or his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself."); *Buhl v. Cooksey*, 233 F.3d 783, 794 (3d Cir. 2000) ("[Defendant's] motivation

for waiving counsel was not the issue. . . . Once [the defendant] properly asserted his right to proceed *pro se* the trial court was obligated to undertake an appropriate inquiry under *Faretta* even though [the defendant's] request apparently rested upon nothing other than dissatisfaction with defense counsel."); *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir. 1994) ("The right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of trial." (quotation omitted)); *Commonwealth v. Spotz*, 18 A.3d 244, 265 n.12 (Pa. 2011) ("[A] court's disagreement with a defendant's reason for proceeding *pro se* does not constitute grounds for denial of this constitutional right."). Hence, once the equation changed from "Soldati versus new counsel" to "Soldati versus self-representation," it was the defendant's determination as to whether Soldati had a conflict of interest or was unprepared — not the trial court's — that should have been controlling.[1] *Cf. McKaskle v. Wiggins*, 465 U.S. 168, 178, 185 (1984) (emphasizing that the "core" of the *Faretta* right is a defendant's entitlement to maintain actual control over his defense). Where, as here, timing was not an issue and there was no question as to the defendant's competency for self-representation, *see Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008), if he was prepared to make a knowing, intelligent and voluntary decision to proceed *pro se* and thereby to waive his right to counsel, *Faretta*, 422 U.S. at 835, and he was not making that decision for a prohibited reason, such as delay or disruption of the proceedings, *see id.* at 834 n.46, the defendant was entitled to discharge Soldati for any reason or no reason at all. *See Flanagan*, 978 A.2d at 81 (stating that *Faretta* recognizes three reasons for denying a defendant his right to self-representation: (1) the request is untimely; (2) the defendant engages in serious obstructionist misconduct; (3) the defendant has not knowingly and intelligently waived his right to counsel).

On the other hand, if the dissent means that the defendant's complaints about Soldati were so far-fetched that the trial court could have found even the defendant himself could not genuinely have believed them to have merit, I agree that under appropriate circumstances this could be a proper factor for a trial court to evaluate in ruling on a defendant's request for self-representation because it may be indicative of manipulative intent. But here the record simply does not support such an inference. Given the scorched-earth quality of much of modern-day political discourse, can we really say it is implausible that a lay person in the defendant's shoes might

---

[1] Although a trial court has no authority to substitute its judgment for that of the defendant regarding the merits of the reasons upon which the decision to proceed *pro se* is based, this is not to say that the court is prohibited from inquiring into those reasons insofar as they may have a bearing on whether the defendant's waiver of his right to counsel is made knowingly, intelligently and voluntarily. *See Buhl*, 233 F.3d at 798.

have a genuine, albeit unwarranted, concern that the elected official serving as his counsel would be affected by the prospect of criticism resulting from his representation of a person accused of committing sexual offenses against a child? Moreover, in addition to the alleged conflict of interest, the defendant expressed concern over Soldati's lack of preparation; and the record shows that this complaint had at least some validity, as evidenced by the fact that Soldati himself asked for and received a four-week continuance of the trial date so that he could review new evidence with the defendant.[2]

Furthermore, even if the trial court could supportably have found (1) that the defendant's initial request to replace Soldati with new counsel was a manipulative effort to delay the trial and (2) that despite his suggestion that the court had misunderstood his initial request, the defendant's attempt to "correct the record" was actually a *change in position* (from wanting new counsel to wanting to represent himself), such findings would not provide a basis for the court to have regarded the defendant's request to proceed *pro se* as a further effort to delay the proceedings because, when he made this request, the defendant specifically indicated that he wanted to represent himself so as to avoid the need for a continuance.

Rather than an effort to delay the trial, what the dissent finds most objectionable is that the defendant's request to proceed *pro se* may have been motivated, at least in part, by his desire to pressure the court into revisiting its denial of the appointment of new counsel. But the reality is that such an implicit threat ("If you won't appoint new counsel for me judge, then I'll make your life more difficult by representing myself.") is present in virtually *all* requests for self-representation conditioned on the denial of a request for new counsel. Yet, courts have not generally regarded such conditional requests as equivocal.[3] *See, e.g., United States v. Frazier-*

---

[2] Although the record indicates that the defendant had been represented by several other attorneys before Soldati was appointed, it contains no evidence whatsoever about the circumstances under which prior counsel were appointed or discharged. In particular, there is no evidence that prior to the appointment of earlier counsel the defendant had made similar requests to proceed *pro se*, or that, having made such a request, he then changed his mind and asked for counsel again. *See Williams*, 44 F.3d at 101 ("Of course, when a defendant changes his mind [about self-representation] after trial begins, or does so repeatedly at any stage, a court may find that the conduct is manipulative or abusive in some other way. If so, the conduct can be considered vacillation, and a trial judge may find the request equivocal.").

[3] I believe the dissent is wrong in suggesting that the trial court could reasonably have thought it adequately addressed the defendant's conditional request for self-representation by granting the four-week trial continuance. *See post* at 818. Unlike in *Jordan v. Ficco*, 134 Fed. Appx. 452 (1st Cir. 2005), on which the dissent relies, here there is no basis for concluding that a continuance was the defendant's "preferred form of relief." *Id.* at 454. To the contrary, the defendant's preferred form of relief in this case was the replacement of Attorney Soldati with new counsel — relief which the trial court denied. That the granting of the four-week continuance did not satisfy the defendant is made clear by the fact that he raised his complaints against Soldati *after* the court had already granted the continuance.

*El*, 204 F.3d 553, 566-67 (4th Cir. 2000) (Murnaghan, J., dissenting) (collecting cases from various circuits); *State v. Blom*, 682 N.W.2d 578, 613 (Minn. 2004) ("[A] motion for self-representation is not equivocal simply because it is made as an alternative plan in case the court does not grant a defendant's motion for a different attorney."); *Gallego v. State*, 23 P.3d 227, 236 (Nev. 2001) (stating that correct procedure with such conditional requests is for court to deny the appointment of substitute counsel (where warranted) and ascertain whether defendant's desire to represent himself remains extant in light of the fulfillment of the condition); *cf. State v. Thomas*, 150 N.H. 327, 329 (2003) (upholding validity of defendant's waiver of counsel and election to represent himself after his request for appointment of latest successor counsel was denied); *State v. Davis*, 139 N.H. 185, 190-91 (1994) (same); *State v. Panzera*, 139 N.H. 235, 238-39 (1994) (rejecting claim that decision to proceed *pro se* was involuntary where trial court denied defendant's request to be represented by specific attorneys and continuance required by appointment of successor counsel would not have violated defendant's speedy trial rights).

For example, in *Adams v. Carroll*, 875 F.2d 1441 (9th Cir. 1989), the court dealt with a factual situation that clearly presented the so-called "bargaining chip" scenario. The defendant first requested counsel, then asked to represent himself when he became dissatisfied with his public defender, then requested counsel again, and finally asked to represent himself again when the same public defender was reappointed as his counsel. *Id.* at 1445. Following his conviction in state court, the defendant sought habeas corpus relief in federal district court. The district court denied relief, finding that "because [the defendant] asked to represent himself solely as a means of dispensing with [the public defender], his request for self-representation was in fact a thinly veiled motion to substitute counsel" rather than "a genuine request for self-representation." *Id.* at 1443. On appeal, the Ninth Circuit reversed, holding that while the defendant's requests for self representation "no doubt were *conditional* [upon the denial of his request for new counsel], they were not equivocal." *Id.* at 1445; *accord Williams*, 44 F.3d at 100 ("A defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative, simultaneously requests the appointment of new counsel, or uses it as a threat to obtain private counsel."). As Judge Murnaghan pointedly observed in his *Frazier-El* dissent:

> There is no reason that a conditional *pro se* request should send the district court into analytical disorientation. Rather than flatly denying a request for self-representation because the form of the request is a conditional one, the court should simply frame the

conditional request in clear terms and make the defendant acknowledge on the record that the court has properly understood the request. . . .

Forcing defendants to articulate their position in such precise terms is one step toward combating the "reversible error" scenario. The second step is even simpler. As long as the district court elicits the precise contours of a defendant's request, appellate courts will not countenance arguments by defendants on appeal that the district court improperly allowed them to proceed *pro se*. The district court need not worry about clever defendants manipulating them into "reversible error" as long as the district court does a sufficient job of engaging the defendant on the record.

*Frazier-El*, 204 F.3d at 572-73 (Murnaghan, J., dissenting).

As the above discussion makes clear, even if it is assumed that the trial judge in this case had some unarticulated concern that the defendant might be trying to manipulate the proceedings by, for instance, asking to proceed *pro se* merely for the purpose of securing Soldati's removal and with the intention of making a new request for counsel after Soldati had withdrawn, the court had ample tools available to prevent such abuse. As part of a *Faretta* colloquy with the defendant, the court could have made it clear that based on its finding of a lack of cause for removing Attorney Soldati, the defendant's choices were to proceed to trial with Soldati or to represent himself, that the trial would not be further continued, and that if the defendant made the decision to proceed *pro se* he would be bound by that decision and would not be able to change his mind because there would be inadequate time remaining to re-engage counsel before the start of trial. *See United States v. Kneeland*, 148 F.3d 6, 11 (1st Cir. 1998) (court acted properly in denying request for counsel where defendant was warned that if present counsel was dismissed he would not be provided with fourth court-appointed attorney); *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976) (district judge may give defendant "choice between proceeding with counsel already appointed or going *pro se*"). In addition, the court could have appointed Soldati to act as defendant's stand-by counsel. *See Faretta*, 422 U.S. at 834 n.46. In my view, however, on this record, what the court could not do is simply deny the request for self-representation based on a presumption that the request was designed to delay or disrupt the proceedings. *See United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982) ("[E]ven well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights.").

The second point relied on by the dissent to support its thesis that the defendant's request was equivocal is the fact that, after the trial court denied his request to proceed *pro se*, the defendant did not again raise the issue of self-representation before the trial court. In particular, the dissent points to the language used by the trial court in denying the request — "Well, at least at this stage — that's fine. I mean, I'm not removing Mr. Soldati. If there's some further motion dealing with anything, I will address it." — as signaling the court's willingness to revisit the issue, and the dissent then infers equivocation (or waiver) from the fact that the defendant did not take the court up on its supposed offer by renewing the request for self-representation at some other point before or during the trial. While I concede that this may be the dissent's strongest argument, I do not find it sufficient to carry the day. Although the court's denial of the defendant's request to proceed *pro se* was not as definitive here as in some other cases where courts have found the absence of repeated requests not indicative of waiver or equivocation, *see, e.g.*, *United States v. Hernandez*, 203 F.3d 614, 622 (9th Cir. 2000) (judge's impatient resistance toward and extremely abrupt colloquy before denying self-representation request made it reasonable for defendant to believe that any further request would be pointless); *Williams*, 44 F.3d at 101 ("[t]he defendant's acquiescence [after the trial court's categorical denial of his request to proceed *pro se*] cannot be read to signify waiver of a constitutionally protected right"); *People v. Dent*, 65 P.3d 1286, 1289-90 (Cal. 2003) (same); *but cf. Flanagan*, 978 A.2d at 78 n.14 (that trial court, after denying request for self-representation, thereafter *sua sponte* raised the issue again at later hearing by asking, "Are you making the request to represent yourself in the remainder of this case?", was not sufficient to infer waiver from failure of defendant then or later to repeat request), it is important not to lose sight of first principles. Under *Faretta* and its progeny, a criminal defendant has a constitutional right to represent himself, which courts are required to respect by conducting an appropriate colloquy once a reasonably clear request to exercise the right has been made. It is not the responsibility of the legally untrained defendant to divine meaning at his peril from a non-responsive or otherwise ambiguous trial court reaction to his *pro se* request. Unfortunately, although undoubtedly inadvertent, that was the nature of the trial court's response in this case. Thus, even if one assumes that the court's statement that it would entertain "some further motion dealing with anything" displayed a willingness to revisit the self-representation issue, the court's ruling that it would not remove Attorney Soldati "at this stage" could well have been understood by the defendant to mean that he had to provide some further grounds for removing Soldati before the court would reconsider its ruling; and if the defendant believed he had no basis for

removal beyond what he had already told the court, there would have been no reason for his raising the issue again.[4]

Even if the defendant's request to represent himself could be regarded as equivocal — a proposition I reject — it was surely at least sufficient to require an inquiry by the trial court under our decision in *State v. Sweeney*, 151 N.H. 666 (2005). Recognizing as much, the dissent offers a third rationale for its decision: it attempts to avoid the result that *Sweeney* mandates — reversal of the convictions — by recasting our holding in that case as mere dicta.

In *Sweeney*, during a hearing immediately before the trial was to begin, the defendant complained about his attorney's failure to make a particular argument, and then asked the judge: "[D]o I have the right to fire my lawyer?" Without making any inquiry, the trial court answered: "At this time, no." *Id.* at 669. We determined that the defendant's request could be interpreted as either a request to proceed *pro se* or as a request for substitute counsel, and held that it was incumbent upon the trial court to "eliminate the ambiguity the question presented. Once the defendant makes a sufficiently clear request to indicate an intention to switch

_____

[4] The cases relied upon by the dissent as support for its assertion that the defendant's failure to press his request for self-representation after the January 25 hearing demonstrates the request's equivocal nature are distinguishable. In *Commonwealth v. Davido*, 868 A.2d 431 (Pa. 2005), before trial the defendant requested the appointment of new counsel or, alternatively, to proceed *pro se*. At the next judicial event following these requests, the court had a brief colloquy with the defendant in which it denied both requests. Thereafter, on the day before trial, the court initiated a further colloquy with the defendant in which it inquired if the defendant still desired to represent himself, and *the defendant responded that he wished to proceed with counsel. Id.* at 439. Thus, although the court referred to the defendant's prior requests for counsel as a "bargaining device," *id.* at 440, the court did not reject his *Faretta* claim on this basis alone. Rather, the court found that, under the totality of the circumstances — including the defendant's colloquy with the court on the day before trial — his request to proceed *pro se* was equivocal. *Id.*; *see also id.* at 449 (Saylor, J., concurring) (rejecting view that conditional nature of defendant's request to proceed *pro se*, posed as an alternative to request for substitute counsel, rendered request equivocal, and opining that only appropriate ground for upholding denial of self-representation was defendant's affirmative abandonment of request).

In *People v. Tena*, 67 Cal. Rptr. 3d 412 (Ct. App. 2007), the trial court denied as untimely the defendant's request to appear *pro se* at his preliminary hearing, but specifically advised him that he could renew the request before trial. *Id.* at 418. Instead of taking the court up on this offer, the defendant retained private counsel who represented him at trial. The court held that the defendant's failure to renew his request after the preliminary hearing not only demonstrated that the request was equivocal, *id.* at 421, but also showed, alternatively, that the request had been abandoned, *id.* at 422.

Finally, unlike in *United States v. Manthey*, 92 Fed. Appx. 291, 295 (6th Cir. 2004), and *Morris v. Kikendall*, 2009 WL 1097922, at *12-13 (E.D.N.Y. Apr. 23, 2009), there is nothing in the record of this case that would support a finding that the defendant's request for self-representation constituted an "off-the-cuff" remark triggered by his frustration with the court's rulings. Indeed, from all that appears, the defendant at all times conducted himself calmly and respectfully throughout the January 25, 2010 hearing.

representational gears, further judicial inquiry is necessary to clarify the nature of those changed intentions." *Id.* at 671 (quotation and citation omitted).

One of the cases we relied on in support of our ruling in *Sweeney* was the First Circuit Court of Appeals decision in *United States v. Proctor*, 166 F.3d 396 (1st Cir. 1999). Because the issue before the court in *Proctor* was the revocation of a request to proceed *pro se* and a reassertion of the right to counsel, the dissent is correct that the court's discussion wherein it wrote the following is technically dicta:

> [E]ven though most circuits require "clear and unequivocal" *Faretta* waivers, it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must *result in* a clear and unequivocal statement.

*Proctor*, 166 F.3d at 402-03 (citation omitted). However, even though dicta, *Proctor*'s discussion of the trial court's duty of inquiry regarding self-representation requests addressed an important issue that has generally been overlooked in the case law. While *Faretta* and its progeny plainly require that a defendant's assertion of his right to self-representation must be clear and unequivocal, most cases have not explored the question of *when* the required level of clarity is to be assessed. Since it is universally recognized that before a request to proceed *pro se* can properly be granted, the trial court must engage in a detailed colloquy with the defendant regarding waiver of the right to counsel, the dangers of self-representation, etc., there can be no doubt that *at the conclusion of that colloquy* the defendant's desire to represent himself must be absolutely clear. What *Proctor* recognized — and what we found persuasive in *Sweeney* — is that the very requirement to engage in the colloquy contemplates that at least some level of ambiguity or uncertainty is not enough to defeat the court's obligation to conduct the colloquy in the first place. *See Proctor*, 166 F.3d at 403; *accord Flanagan*, 978 A.2d at 77; *Edwards v. Com.*, 644 S.E.2d 396, 404 (Va. Ct. App. 2007) (Humphreys, J., concurring in part and dissenting in part) ("It is only after [a *Faretta*] dialogue that a trial court can determine whether the waiver is knowing and voluntary, the request for self-representation is unequivocal, and the defendant knows what he is doing and his choice is made with eyes open." (quotation omitted)). Indeed, if complete clarity were demanded from the outset, there would be little purpose in conducting the inquiry. *See Sweeney*, 151 N.H. at 671 ("Once the defendant makes a *sufficiently* clear request to indicate an intention to shift

representational gears, further judicial inquiry is necessary to clarify the nature of those changed intentions." (emphasis added)).

Contrary to the dissent's assertion, *Sweeney* cannot be "properly read," *post* at 822, to limit the duty of inquiry to situations in which a defendant expresses dissatisfaction with appointed counsel. While we undoubtedly relied on the above dicta from *Proctor* in support of our decision, it does not follow that the duty of inquiry we imposed in *Sweeney* can itself be regarded as dicta insofar as requests for self-representation are concerned. Quite the contrary, *Sweeney* clearly held that the duty of inquiry applied *regardless* of whether the defendant's "[D]o I have the right to fire my lawyer?" remark was an expression of dissatisfaction with counsel or a request to proceed *pro se. See Sweeney*, 151 N.H. at 670 ("While we agree with the State that the defendant's question did not, by itself, constitute a demand to proceed *pro se*, we *hold* that it was sufficient to trigger the court's duty to inquire further." (citations omitted; emphasis added)).[5]

Finally, I believe there can be no serious dispute that the defendant's request for self-representation in this case was *far clearer* than the request at issue in *Sweeney*. Unlike in *Sweeney*, where the defendant merely asked if he could fire his lawyer and said nothing about self-representation as an alternative, here the defendant specifically expressed his desire "[t]o proceed *pro se*." Thus, while I believe that *Sweeney* was correctly decided and did not press the duty of inquiry further than is prudent, even if the dissent does not share that view, this is hardly the case to use as the vehicle for correcting any such perceived error.

Before concluding, I also feel the need to address an institutional concern regarding the importance of our ruling in *Sweeney* in light of some of the case law from other jurisdictions. I fully support the proposition that, because of the antithetical nature of the right to counsel, on the one hand, and the right of self-representation, on the other, and because the harm to

---

[5] It is important to note that the remedy we implemented in *Sweeney* was reversal of the defendant's convictions and remand for a new trial. This remedy was required only because of the prospect that what the defendant was asking for was to proceed *pro se*, and denial of that right is not subject to harmless error analysis. If we had regarded the duty of inquiry as applicable only to ambiguous expressions of dissatisfaction with counsel, the appropriate remedy would have been to remand the case to the trial court to determine which right — replacement of inadequate counsel or self-representation — the defendant was attempting to assert, and, if it was the former, whether there had in fact been grounds for discharging the defendant's counsel. Had the trial court found (1) that the defendant was seeking substitute counsel rather than self-representation and (2) that there were no grounds for removing counsel who represented the defendant at trial, we then could have affirmed the defendant's conviction. While such an inquiry no doubt would have inherent difficulties — with the benefit of hindsight the defendant would have an obvious incentive to assert that what he had been seeking was to proceed *pro se* — as an alternative to automatic reversal, it would have been worth the effort.

both the individual defendant and the justice system that results from the absence of counsel is usually more severe than that flowing from the denial of self-representation, the former should be treated as the "paramount right" when, *after efforts that are reasonable under the circumstances*, such ambiguity or uncertainty remains that a court cannot ascertain which right a defendant desires to invoke. *See Tuitt v. Fair*, 822 F.2d 166, 177 (1st Cir. 1987); *Adams*, 875 F.2d at 1444. At the same time, however, courts must be vigilant to avoid adopting procedures for invoking the right of self-representation that have the effect of relegating it to a "disfavored" status in the constitutional hierarchy. *See Frazier-El*, 204 F.3d at 573 (Murhaghan, J., dissenting); *see also Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992) (rejecting idea that right to counsel is the "preferred right, so that defendants have to be especially articulate or forceful to win the right to represent themselves. The two rights are equivalent [and] the defendant is entitled to choose without a thumb on the scale; but because counsel is the normal and prudent choice, it is the default outcome." (citations omitted)). Judges well know that, in all but truly exceptional cases, a defendant's choice of self-representation will prove detrimental to his defense and will almost assuredly prolong and complicate the trial. But paternalistic instincts and/or considerations of judicial convenience must not lead us to countenance a sort of "don't ask — won't tell" policy regarding self-representation, under which courts are tempted to ignore all but the clearest expressions of a desire to proceed *pro se* in the hopes that, by not asking follow-up questions, the defendant will fail to provide the court with sufficient clarification of his wishes as to require the court to grant his request of self-representation. Such an approach would seriously undermine the respect for human dignity and individual autonomy that lies at the heart of *Faretta*.

DALIANIS, C.J., dissenting. Because I cannot agree with the majority that the request for self-representation made by the defendant, Robert Towle, was clear and unequivocal, I, respectfully, dissent.

Whether a defendant has clearly and unequivocally requested self-representation is a question of fact. *See Randolph v. Cain*, 412 Fed. App'x 654, 657-58 (5th Cir. 2010) (citing cases); *Fields v. Murray*, 49 F.3d 1024, 1032 (4th Cir. 1995) (en banc); *Hamilton v. Groose*, 28 F.3d 859, 862 (8th Cir. 1994); *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994). *But see State v. Flanagan*, 978 A.2d 64, 74-75 (Conn. 2009) (holding that whether defendant clearly and unequivocally requested self-representation is mixed question of law and fact to be reviewed *de novo*). This is because determining whether the defendant's request is clear and unequivocal "involves factual determinations [that are] difficult, if not impossible, to

make from a silent paper record." *Edwards v. Com.*, 644 S.E.2d 396, 402 (Va. Ct. App. 2007). "Whether a . . . request [for self-representation] is 'clear and unequivocal' involves much more than simply measuring how emphatically it has been asserted." *Id.* at 401. As the Fourth Circuit Court of Appeals has explained:

> The clarity and unequivocality of a defendant's expression is determined not only by the words he speaks, but by his way of speaking them and his manner and demeanor when he is speaking; undeniably, the same words can express different degrees of certainty depending on how they are spoken. A transcript of the . . . trial court proceedings can reveal neither the way a defendant spoke when he indicated his desire to represent himself nor the manner and demeanor he assumed at the time of this indication.

*Fields*, 49 F.3d at 1031. "In determining whether a defendant's statement is clear and unequivocal, courts have looked at the overall context of the proceedings." *People v. Burton*, 703 N.E.2d 49, 59 (Ill. 1998); *see Com. v. Davido*, 868 A.2d 431, 439 (Pa. 2005) (inquiry regarding whether request for self-representation is clear and unequivocal is fact-intensive and is based upon totality of circumstances surrounding request). "We will uphold the trial court's factual findings provided that the evidence supports them and they are not unlawful." *State v. Glenn*, 160 N.H. 480, 489-90 (2010).

"To invoke the right to self-representation, a defendant need not recite some talismanic formula." *State v. Sweeney*, 151 N.H. 666, 670 (2005) (quotation omitted); *see Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986); *Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000). Rather, a defendant seeking self-representation must "do no more than state his request, either orally or in writing, unambiguously, to the court so that no reasonable person can say that the request was not made." *Dorman*, 798 F.2d at 1366; *Buhl*, 233 F.3d at 792 ("[T]he law simply requires an affirmative, unequivocal, request, and does not require that request to be written or in the form of a formal motion filed with the court.").

The requirement that a request to proceed *pro se* be clear and unequivocal serves at least two purposes. "First, it acts as a backstop for the defendant's right to counsel, by ensuring that [he] . . . does not inadvertently waive that right through occasional musings on the benefits of self-representation." *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). "This protection against an inadvertent waiver of the right to counsel is especially important because representation by counsel does not merely tend to ensure justice for the individual criminal defendant, it marks the

process as fair and legitimate, sustaining public confidence in the system and in the rule of law." *United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir. 2000) (quotation omitted).

Second, the requirement "serves an institutional purpose: It prevents a defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation." *Adams*, 875 F.2d at 1444; *see United States v. Cromer*, 389 F.3d 662, 683 (6th Cir. 2004) ("Requiring an articulate and unmistakable demand of the right to proceed *pro se* decreases the danger of a savvy defendant manipulating these two mutually exclusive rights to put the [trial] court in a Catch-22."). "A defendant who vacillates at trial between wishing to be represented by counsel and wishing to represent himself could place the trial court in a difficult position." *Adams*, 875 F.2d at 1444. "If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself; if the court permits self-representation, the defendant could claim he had been denied the right to counsel." *Id.* "The requirement of unequivocality resolves this dilemma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel." *Id.*; *see Tuitt v. Fair*, 822 F.2d 166, 174 (1st Cir. 1987) ("Where the two rights are in collision, the nature of the two rights makes it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless.").

Courts "indulge in every reasonable presumption against waiver of counsel." *State v. Davis*, 139 N.H. 185, 190 (1994) (quotations omitted); *accord Buhl*, 233 F.3d at 790; *United States v. Woodard*, 291 F.3d 95, 106, 109 (1st Cir. 2002) (right to counsel is paramount). "In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." *Frazier-El*, 204 F.3d at 559. "At bottom, the [constitutional] right to self-representation is not absolute . . . ." *Id.* While it "exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense[,] [t]he right does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *Id.* at 560 (quotation and citations omitted); *see Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). "A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *Frazier-El*, 204 F.3d at 559; *see Martinez v. Court of Appeal of Cal. Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000) ("[T]he

government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.").

Consistent with these principles, numerous courts have ruled that a court may properly deny a defendant's request for self-representation if the request is intended to manipulate the court or delay the proceedings. *See United States v. Bush*, 404 F.3d 263, 271-72 (4th Cir. 2005) (request made to manipulate court or delay proceedings is deemed not to be clear and unequivocal); *United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir. 2000) (affirming denial of request for self-representation made two weeks before scheduled trial date when evidence in record supported district court's conclusion that request was "merely a tactic for delay"). *But cf. United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982) ("[E]ven well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights."). Put another way, courts have ruled that it is proper to deny a request for self-representation that is insincere. *People v. Marshall*, 931 P.2d 262, 271 (Cal. 1997) (*Faretta*'s emphasis "on the defendant's knowing, voluntary, unequivocal, and competent invocation of the right suggests that an insincere request . . . may be denied.").

I find *United States v. Manthey*, 92 Fed. App'x 291, 295 (6th Cir. 2004), instructive. In that case, the defendant requested permission to proceed *pro se* at the end of the pretrial at which he had asked the court to release him immediately because of his previous counsel's ineffectiveness. *Manthey*, 92 Fed. App'x at 295. When the court instead appointed new counsel, the defendant said that he wanted to defend himself so that his trial would not be delayed. *Id.* The defendant never repeated that request at later pretrials or during trial. *Id.* The appellate court ruled that the defendant's "single, off-the-cuff remark" was not "the clear and unequivocal request to proceed pro se required by *Faretta*." *Id.*

Similarly, in *Davido*, 868 A.2d at 439, the defendant requested that new counsel be appointed and stated that if new counsel was not appointed, the defendant would have "no other alternative but to [exercise] [his] 6th amendment [right] to represent [him]self and have [the attorney] as [his] assistant." (Quotation omitted.) The trial court denied the defendant's request for a new attorney and to represent himself. *Id.* Based upon its review of "the totality of the circumstances surrounding the request," the Pennsylvania Supreme Court ruled that the defendant did not invoke his right to self-representation. *Id.* The court observed that the defendant's letter was focused upon his request for new counsel and his "request to proceed pro se was posed as his only alternative if he was not afforded new counsel." *Id.* at 440. Thus, the court ruled, "it was employed as a bargaining device, rather than as a clear demand for self representation." *Id.*

With these tenets in mind, I now turn to whether the trial court erred when it impliedly found that the defendant's request to proceed *pro se* was neither unequivocal nor clear. *See State v. Silva*, 158 N.H. 96, 102 (2008) (court assumes that trial court made all findings necessary to support its decision); *Marshall*, 931 P.2d at 273-74 ("We have found no case that declares that unless the trial court made a factual finding on the record explaining its reason for denying a motion for self-representation, the reviewing court must conclude that no proper basis existed for denying the motion or that the defendant's right of self-representation was infringed.").

The majority asserts that the defendant's request to represent himself was "affirmative and unequivocal, even though it was conditional." The majority contends that "the defendant was essentially saying that if the court would not dismiss his lawyer or grant a continuance, then he wanted to represent himself."

Even if I were to agree, *arguendo*, "that an assertion of *Faretta* rights may be efficacious even if it is only made on the condition that another requested and preferred form of relief be deprived, . . . this does not mean that a conditional assertion of *Faretta* rights is *always* efficacious." *Jordan v. Ficco*, 134 Fed. App'x 452, 454 (1st Cir. 2005) (citation omitted). Under the majority's own analysis, the defendant conditioned his request for self-representation upon the trial court's denial of his request to dismiss his lawyer (and appoint a new one) or to grant a continuance. However, the trial court *granted* the defendant a four-week continuance until January 25th. Thus, he received the alternative relief he requested. Although the trial court interpreted the defendant's request as a motion for a continuance beyond January 25th, the defendant did not say this. Rather, he asked only "for a continuance just so long enough to gather [his] exculpatory evidence" and review his case with counsel.

When, as in this case, "the alleged assertion of *Faretta* rights is clearly conditioned on the denial of a preferred form of requested relief involving counseled representation," and when, as in this case, the trial court has granted the defendant the preferred form of relief (here, a continuance), "without subsequent objection or renewal of the request for self representation, it would undermine the Sixth Amendment to treat the conditional assertion of *Faretta* rights as efficacious." *Id.* I am "unwilling to endorse such a result." *Id.*

Moreover, based upon "all of [the] defendant's words and conduct," I believe that the trial court could reasonably have decided that the defendant did not "truly wish[] to give up the right to counsel and represent himself and that his invocation of his right to self-representation was neither unequivocal nor sincere. *See Marshall*, 931 P.2d at 274, 275.

The trial court reasonably could have viewed the defendant's request that Attorney Soldati be removed for cause as specious. The record demonstrates that Attorney Soldati was not the defendant's first counsel, and that before he was appointed to represent the defendant, numerous prior counsel had withdrawn. As Attorney Soldati informed the court, when asking for a continuance: "I understand that there's been a series of counsel that have had this case." According to the trial court, the defendant's case had been continued "a number of times, sometimes at [the defendant's] request."

Additionally, the alleged "conflict of interest" to which the defendant pointed was hardly that. To prevail upon a motion for substitute appointed counsel, a defendant must establish that the conflict between him and his counsel "was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Genao*, 281 F.3d 305, 312 (1st Cir. 2002) (quotation omitted). The conflict asserted by the defendant does not come close to meeting this standard. In the defendant's view, because Attorney Soldati was soon to be mayor, he had a motive to "sink" the defendant's case "so he [could] get [a] conviction" and demonstrate his commitment to keeping the community safe. The defendant's concern borders on the frivolous.

The trial court could reasonably have viewed the defendant's reference to representing himself as specious as well. The defendant told the court, in effect, that the court had misconstrued his prior complaints about Attorney Soldati. The record supports a finding that this claim was disingenuous. When Attorney Soldati first raised the issue, he said nothing about the defendant wanting to represent himself. When the court allowed the defendant to air all of his complaints about his attorney, the defendant also said nothing about wanting to represent himself. Indeed, he made it clear that he wanted to be represented by counsel; specifically, he wanted a continuance so that he could "review [his] case more thoroughly or even . . . begin to review [his] case with counsel."

Further, the trial court could also have reasonably viewed the defendant's asserted justification for representing himself as disingenuous. The defendant said that he wanted to represent himself because he did not want to be delayed by the appointment of new counsel, yet when he complained about Attorney Soldati, he specifically said that he wanted a continuance.

In light of the defendant's borderline frivolous motion to have Attorney Soldati removed because of a "conflict," and his disingenuous suggestion that when he complained about his attorney, he intended to assert his right to self-representation, I believe that the trial court reasonably could have viewed the defendant's reference to representing himself as a gambit, as a "polite form of blackmail" to pressure the court to appoint a new attorney

for him. *People v. Lopez*, 172 Cal. Rptr. 374, 377 (Ct. App. 1981). "Any dispassionate reading of this record reflects that this defendant was playing games with the court on this issue." *Id.*

The defendant's failure to mention representing himself again until this appeal further supports the view that his initial request was insincere. *See Manthey*, 92 Fed. App'x at 295; *see also People v. Valdez*, 82 P.3d 296, 317 (Cal. 2004) ("[T]he fact that defendant made only a single reference to the right to self-representation . . . supports the conclusion that defendant did not make an unequivocal *Faretta* motion."); *Morris v. Kikendall*, No. 07-CV-2422 (JFB), 2009 WL 1097922, at *11 (E.D.N.Y. April 23, 2009). *But see People v. Dent*, 65 P.3d 1286, 1289-90 (Cal. 2003) (when court told defendant he could not speak except through counsel, defendant's failure to renew his request to proceed *pro se* was not evidence of equivocation; defendant could well have been convinced that any further request for self-representation would be futile).

In this case, unlike *Dent*, the trial court indicated that it *would* entertain a future motion. When it denied the request, the court said: "Well, at least at this stage — that's fine. I mean, I'm not removing Mr. Soldati. If there's some further motion dealing with anything, I will address it." I interpret this statement to mean that the court would entertain a future motion by the defendant to proceed *pro se*. Regardless, after hearing this statement, the defendant could not reasonably have believed that the trial court had conclusively foreclosed the option of self-representation. *See People v. Tena*, 67 Cal. Rptr. 3d 412, 422 (Ct. App. 2007).

Given the totality of the circumstances surrounding the defendant's request, I would conclude, like the *Manthey* court, that the defendant's "single, off-the-cuff" reference to representing himself did not constitute an unequivocal request for self-representation as required by *Faretta*. The defendant's statements "do not constitute an unequivocal invocation of the right of self-representation simply . . . because the trial court failed to make an express finding on the record that the request was equivocal" or otherwise explain its reasoning for denying the request. *Marshall*, 931 P.2d at 274.

Even if I were to agree with the defendant's interpretation of his request, because I view the alternative interpretation described above as reasonable, I would be constrained to find his request ambiguous. *See Burton v. Collins*, 937 F.2d 131, 134 (5th Cir. 1991). "The fact that there is more than one reasonable interpretation of the dialog between [the defendant] and the trial judge is, in a sense, the best evidence that [the defendant] did not clearly and unequivocally assert his right to self-representation." *Id.* "Our task . . . is not to evaluate whether these competing interpretations [of the defendant's words] are evenly balanced or assess which is more reasonable.

Our obligation, like the [trial] court's, is to indulge in every reasonable presumption against waiver of the right to counsel. Therefore, in the face of ambiguity, I must credit the position most protective of that most important right." *United States v. Proctor*, 166 F.3d 396, 405 (1st Cir. 1999) (quotation and citation omitted). "In [the] absence of a clear indication by [the defendant] of his desire to waive his fundamental constitutional right to counsel, we are unwilling to infer from an ambiguous record that such a waiver existed." *Burton*, 937 F.2d at 134.

Alternatively, the defendant contends that even if his request to proceed *pro se* was ambiguous, it was incumbent upon the trial court to resolve the ambiguity his words created. He relies upon our decision in *Sweeney* to support this argument; I find his reliance misplaced.

In *Sweeney*, while complaining that his attorney refused to make a particular argument on his behalf, the defendant asked the trial court if he "ha[d] the right to fire [his lawyer]." *Sweeney*, 151 N.H. at 668, 669 (quotation and emphasis omitted). Rather than inquire further, the trial court answered, "At this point in time, no." *Id.* at 669 (quotation and emphasis omitted). We ruled that the defendant's request could be interpreted either as a request to proceed *pro se* or as a request for substitute counsel. *Id.* at 671. We held that it was incumbent upon the trial court to resolve the ambiguity that the defendant's question presented. *Id.*

In *Sweeney*, we relied upon dicta from *Proctor*, 166 F.3d at 403. *See Sweeney*, 151 N.H. at 670. *Proctor*, however, was distinguishable from *Sweeney*, and is distinguishable from the instant matter, because it did not involve a waiver of the right to counsel; it involved the *revocation* of such a waiver. *See Proctor*, 166 F.3d at 397, 402-03. In my opinion, our reliance in *Sweeney* upon the dicta from *Proctor* was, thus, misplaced.

*Sweeney* can be interpreted as conflating a court's duty when faced with a defendant's expressed dissatisfaction with appointed counsel with its duty when faced with a defendant's ambiguous request to proceed *pro se*. In the former situation, the court has an affirmative duty to inquire further. *See United States v. Prochilo*, 187 F.3d 221, 225 (1st Cir. 1999) ("Where the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction." (quotation and ellipsis omitted)). In the latter, the court's duty to inquire is not triggered because the defendant's request for self-representation was not clear and unambiguous. *See Raulerson v. Wainwright*, 469 U.S. 966, 970-71 (1984) (Marshall, J., dissenting from denial of petition for writ of certiorari) ("If a request [for self-representation] is ambiguous, the trial judge need not respond, because there has been no clear indication of a desire to waive a right to counsel. If the request is clear . . . , a *Faretta* hearing must follow, to assure that the defendant is not required to proceed with the unwanted

assistance of counsel."); *Cromer*, 389 F.3d at 682 ("*Faretta* procedures are only required when a defendant has clearly and unequivocally asserted his right to proceed *pro se*."); *Winstead v. Com.*, 283 S.W.3d 678, 683 (Ky. 2009) (same); *Gill v. Mecusker*, 633 F.3d 1272, 1293 (11th Cir. 2011) ("[A] trial court's obligation to conduct a *Faretta* hearing, at which a defendant is made aware of the dangers and disadvantages of self-representation, is triggered by the defendant's clear and unequivocal assertion of a desire to represent himself." (quotations and brackets omitted)); *see also Tuitt*, 822 F.2d at 176-77; *State v. Barham*, 126 N.H. 631, 637 (1985).

A requirement that a trial court inquire further when faced with a request for self-representation that is neither clear nor unambiguous "creates an undesirable counterweight which may lead to a defendant's making a choice which is ordinarily not in his interest." *Com. v. Myers*, 748 N.E.2d 471, 476 (Mass. App. Ct. 2001). Because the right to represent oneself necessarily involves a waiver of the right to counsel, and because the right to counsel is paramount, the judge's role in this strategic decision would be problematic; to the extent the judge appeared to urge the defendant to exercise his right to self-representation, the judge would appear to urge him to waive the right to counsel. *See id.*

Properly read, therefore, I view our holding in *Sweeney* regarding the court's duty to inquire further as limited to the duty to inquire when a defendant expresses dissatisfaction with appointed counsel. To the extent that *Sweeney* can be interpreted to require a trial court to inquire further of a defendant when the defendant has not clearly and unambiguously asserted the right to proceed *pro se*, I view this language as dicta and not controlling in the instant case.

Here, the defendant does not argue, nor could he, that the trial court failed to inquire sufficiently as to his reasons for his dissatisfaction with Attorney Soldati. Faced with an ambiguous request to proceed *pro se*, and having explored sufficiently the defendant's reasons for being dissatisfied with his attorney, I would conclude that the trial court had no constitutional obligation to inquire further.

For all the above reasons, therefore, I would hold that the trial court did not violate the defendant's constitutional right to represent himself because the defendant's request for self-representation was neither clear nor unequivocal. Because the New Hampshire Constitution is at least as protective as the Federal Constitution under these circumstances, *see State v. Thomas*, 150 N.H. 327, 330 (2003); *Faretta*, 422 U.S. at 807, I would necessarily reach the same conclusion under both constitutions.

HICKS, J., joins in the dissent.